```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
FRANK BARBARO,                           :
                  Plaintiff,             :
                                         :    05 CIV. 6998 (DLC)
        -v-                              :
                                         :    OPINION AND ORDER
UNITED STATES OF AMERICA ON BEHALF OF    :
THE FEDERAL BUREAU OF PRISONS FCI        :
OTISVILLE, WITH THE FOLLOWING NAMED      :
PRISON OFFICIALS WHO ARE BIVENS          :
DEFENDANTS: M.E. RAY; HARRELL WATTS;     :
DR. SUNDARIN; DR. GENOVESE; DR.          :
WILLIAMS; P.A. HUGO SANCHEZ; and JANE    :
VANDER HEYWRIGHT,                        :
                  Defendants.            :
                                         :
---------------------------------------- X
```

Appearances:

For Plaintiff:

Elizabeth Lefebvre-Gross
White & Case LLP
1155 Avenue of the Americas
New York, New York 10036-2787

For Defendants:

Peter M. Skinner
Assistant United States Attorney
86 Chambers Street
Third Floor
New York, New York 10007

DENISE COTE, District Judge:

Plaintiff Frank Barbaro ("Barbaro") was injured in an automobile accident before becoming a federal prisoner. He brings this action to recover for the defendants' failure to

treat those injuries while he was incarcerated at the Federal Correctional Institution in Otisville, New York ("Otisville") between January 1998 and December 2003. This Opinion revisits rulings on whether the statute of limitations bars certain portions of Barbaro's claims. For the reasons described below, the prior rulings remain unchanged.

Barbaro filed his first administrative tort claim on March 1, 2004. Acting pro se, he filed this Federal Tort Claims Act ("FTCA") and Bivens action on August 5, 2005, and an amended complaint ("Complaint") on November 1, 2005. An Opinion of October 10, 2006 ("2006 Opinion") granted in part the defendants' motion to dismiss the Complaint. Barbaro v. United States, No. 05 Civ. 6998 (DLC), 2006 WL 2882975 (S.D.N.Y. Oct. 10, 2006). Of significance here, the 2006 Opinion held that Barbaro's FTCA claim was untimely to the extent it was based on events occurring prior to March 1, 2002, and that the continuous treatment doctrine did not permit Barbaro to circumvent the FTCA's two year statute of limitations. Id. at *2-3. As for Barbaro's Eighth Amendment deliberate indifference Bivens claim, the 2006 Opinion held that the claim was barred to the extent that it sought recovery for events occurring before August 5, 2002, that is, three years prior to the filing of this action. The 2006 Opinion observed that even if the continuous treatment doctrine applied outside the context of professional

2

malpractice, it would not toll the statute of limitations for Barbaro's Eighth Amendment claim. Id. at *4. The 2006 Opinion allowed Barbaro's FTCA and Eighth Amendment claims to proceed to the extent they arose from the defendants' failure to treat him in response to requests that he made within their respective statutes of limitation. Pursuant to newly appointed counsel's request, an Order of July 10, 2007 permitted Barbaro a second opportunity to oppose the defendants' motion to dismiss and to recover the opportunity to proceed based on a failure to treat him prior to the two and three year cut-off dates.

Given that Barbaro was not previously represented by counsel, his renewed opposition to the motion to dismiss is treated as a supplement to his previous opposition, not as a motion for reconsideration.[1] The standards governing a Rule 12(b)(6) motion to dismiss and the statute of limitations analysis for FTCA and Bivens claims, as well as the facts alleged in the Complaint, were described in the 2006 Opinion, and familiarity with that opinion is presumed.

---

[1] In support of his renewed opposition memorandum, Barbaro has submitted three documents: a response to one of Barbaro's requests for an administrative remedy, dated June 30, 2003; a prison doctor's memorandum describing the need for Barbaro to see a neurosurgeon, dated October 27, 2003; and an administrative appeal form that Barbaro signed on November 13, 2003. These documents, even if considered on this motion to dismiss, would not alter the result reached below.

3

DISCUSSION

   I.   FTCA Claim

Barbaro contends that the 2006 Opinion erred (1) in concluding that Barbaro's FTCA claim accrued before the two-year statute of limitations date, March 1, 2002, and (2) in rejecting his reliance on the continuous treatment doctrine to toll the statute of limitations. Both of these contentions are rejected.

The plaintiff points to no error in the 2006 Opinion's statement of the discovery rule for the accrual of an FTCA claim. See Barbaro, 2006 WL 2882975, at *2. An FTCA claim, thus, accrues at the time of injury or at the time a plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause. Id. (citation omitted).

Barbaro contends that his FTCA medical malpractice claim accrued no earlier than March 2003, when a radiologist reviewed Barbaro's MRI studies and noted "marked degenerative change within the cervical spine." While Barbaro admits that he knew before that time that he had injuries, including spinal injuries, from a prior car accident and knew that the defendants had refused the more than 100 requests he had made for medical treatment of those injuries, he argues that he "was unaware that his condition was deteriorating as a result" of defendants' failure to provide treatment.

4

The Second Circuit has not addressed the accrual of an FTCA medical malpractice claim that alleges that non-action by a defendant aggravated a pre-existing condition.  In evaluating a summary judgment decision in a Federal Employers' Liability Act ("FELA") action, which also has a discovery-based trigger for its statute of limitations, however, it has addressed a claim that the plaintiff suffered from gradual injuries sustained before and during the statute of limitations.  <u>Mix v. Delaware & Hudson Ry. Co.</u>, 345 F.3d 82, 88 (2d Cir. 2003).  It held that plaintiffs can recover for gradual injuries suffered during the limitations period that "are <u>sufficiently distinct</u> from those previously suffered" and can recover for aggravation to existing injuries, provided that "the aggravation was caused <u>by a distinct act of negligence</u> whose existence and relationship to the injury was unknown" prior to the limitations period.  <u>Id.</u> at 86, 90 (emphasis supplied).  In contrast, ongoing tortious conduct does not toll or restart the statute.  <u>Id.</u> at 89.  The plaintiff in <u>Mix</u> complained of hearing problems associated with continual exposure to loud noise during his work for the railway.  <u>Id.</u> at 85.

To establish that an injury is distinct, a plaintiff may show that a separate condition arose during the limitations period due to the lack of care, or that initial symptoms, which were temporary in nature, became permanent injuries during the

5

limitations period due to the cumulative impact of the injuries. Id. at 90-91. Thus, a temporary discomfort may manifest itself "as a cumulative, permanent injury" during the limitation period. Id. As for evidence that there is a distinct cause of injury, a continued failure to treat does not qualify as a distinct cause. Id.

Barbaro does not contend that there was any distinct act of negligence that was sufficient to shift the accrual date for the statute of limitations forward. Nor does he contend that he discovered in March 2003 that he was suffering from a condition separate from that of which he had long been aware. Barbaro argues instead that the failure to provide him with adequate medical care "seriously aggravated" his pre-existing medical conditions. He contends in opposition to this motion that he did not know until an MRI was performed in 2003 that his condition was "actually deteriorating."

Based on the allegations in the Complaint, the Government has shown that it is entitled to a finding that the statute of limitations for those FTCA claims arising from any failures to treat his injuries before March 1, 2002 accrued before that date. Barbaro does not plead that he learned after that date of a distinct injury arising from the failure to provide care. Instead, he suffered a traumatic injury from an auto collision that preceded incarceration. The Complaint repeatedly alleges

6

that Barbaro understood from the beginning of his incarceration that he was suffering from serious injuries that required immediate attention, including surgical care, because they were "degenerative."  Barbaro alleges in the Complaint that he arrived in federal prison with herniated discs in his neck and back and a regularly dislocating shoulder.  These gave him daily pain, stiffness, range of motion and strength limitations, tingling and numbness, muscle atrophy and physical deformity, nerve damage, and anxiety; resulted in sleep deprivation; and impeded his ability to walk, among other things.  Barbaro explains that he reported the daily pain caused by his neck, back and shoulder injuries to the prison every week, advising them on each occasion that he needed to be examined by a neurosurgeon and an orthopedic surgeon.  He asserts that the medical records from January 1998 onwards demonstrate the degeneration of his condition.  The Complaint, even when construed liberally, does not support an inference that Barbaro learned of a distinct injury through the report of the MRI conducted in 2003.[2]

---

[2] Barbaro mentions in passing that he would like to amend his pleading a second time if his arguments are rejected here.  He does not attach a proposed amendment or describe how an amendment would alter the application of the statute of limitations.  The Government had filed a motion for summary judgment when Barbaro requested and was given an opportunity to revisit the 2006 ruling on the statute of limitations.  Given

Barbaro relies principally on Hughes v. United States, 263 F.3d 272, 276-77 (3d Cir. 2001); Augustine v. United States, 704 F.2d 1074, 1076 (9th Cir. 1983); and Williams v. United States, 03 Civ. 9909, 2007 WL 951382 (S.D.N.Y. Mar. 25, 2007), in support of his contention that an FTCA claim accrues when a plaintiff discovers that his condition has worsened as a result of inadequate treatment. None of these cases, or the others to which he cites, supports a finding that the statute of limitations for Barbaro's FTCA claim accrued in 2003. In each of the three cases, the plaintiff learned that she or he had a much more serious condition than was originally diagnosed or that the injury had occurred because of undisclosed negligence.

In Hughes, the plaintiff awoke from a coma following heart surgery and discovered that he was an amputee. He was advised that he had an unforeseeable allergic reaction, but learned later that the amputation was necessary because the treating physicians had failed to apply anticoagulants in a timely fashion. The Third Circuit held that the statute of limitations accrued not as of the date that the plaintiff discovered he was an amputee, but as of the date the plaintiff discovered or "through the exercise of reasonable diligence should have discovered" that the failure to treat him on a timely basis with

---

this history, Barbaro was required to show that an amendment would serve some purpose. The request is therefore denied.

8

the anticoagulants led to a condition requiring amputation. Hughes, 263 F.3d at 277.

In Augustine, the plaintiff had a bump on his palate that developed later into a cancerous growth and metastasized. Augustine, 704 F.2d at 1076. The Ninth Circuit ruled that the FTCA statute of limitations did not accrue when the plaintiff learned of the bump, but only when he learned that he had a serious condition.

> [T]he injury is the development of the problem into a <u>more serious condition which poses greater danger</u> to the patient <u>or which requires more extensive treatment</u>. In this type of case, it is only when the patient becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more serious condition that his cause of action can be said to have accrued.

Id. at 1078 (emphasis supplied).

Finally, in Williams, the plaintiff had complained of and was treated for gastrointestinal problems, but was later diagnosed with colon cancer. Williams, 2007 WL 951382 at *1. Applying the rule in Augustine, the district court held that the "plaintiff's cause of action accrued, not when plaintiff knew that she had colon cancer, but when plaintiff knew or should have known that her cancer had existed at the time of, and had progressed since, her treatment at Bronx VA." Id. at *6.

Barbaro argues further that, even if his FTCA claim accrued prior to March 1, 2002, the continuous treatment doctrine should

9

toll the statute of limitations. This contention was considered and rejected in the 2006 Opinion, and Barbaro's most recent submission does not present any reason to change that analysis.

II. Eighth Amendment <u>Bivens</u> Claims

Barbaro argues that the full duration of the defendants' failure to treat his injuries is actionable as a <u>Bivens</u> claim pursuant to the continuing violation doctrine. This doctrine was not addressed in the 2006 Opinion, but as the discussion below explains, it does not permit Barbaro to seek recovery for any Eighth Amendment violations that occurred before August 5, 2002.

As described in the 2006 Opinion, <u>Bivens</u> claims are subject to a three-year statute of limitations, meaning that Barbaro may pursue only those claims that accrued on or after August 5, 2002. <u>Id.</u> at *4. The discovery rule, which supplies the statute of limitations rule for FTCA actions, also governs <u>Bivens</u> actions. <u>Paige v. Police Dep't of Schenectady</u>, 264 F.3d 197, 200 (2d Cir. 2001) (Section 1983); <u>Kronisch</u>, 150 F.3d 112, 123 (2d Cir. 1998). As a result, the analysis of the accrual date for FTCA claims applies equally to Barbaro's Eighth Amendment <u>Bivens</u> claims. The Eighth Amendment claims are therefore time-barred to the extent they arise from events

occurring before August 5, 2002.  See Barbaro, 2006 WL 2882975, at *4.

Barbaro argues that the defendants' ongoing failure to provide him with needed medical treatment constitutes a "continuing violation" and thus would be actionable even to the extent that it began occurring and was discovered prior to the limitations period.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002).  In Morgan, the Court held that an employee filing a Title VII claim based on the existence of a hostile work environment need only file a charge within the statutory period "of any act that is part of the hostile work environment."  Id. at 118.  The act need not be the first or the last act reflecting the unlawful employment practice, and it does not matter if "some of the component acts of the hostile work environment fall outside the statutory time period."  Id. at 117.  Morgan refused, however, to recognize the continuing violation doctrine in Title VII cases outside the context of a hostile work environment claim.  It explained that the Court had repeatedly "held that discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period."  Id. at 112.  Moreover, identifying a wrongful act as a "practice" did not succeed in avoiding this rule, since the Court "repeatedly interpreted the term 'practice' to apply

11

to a discrete act or single 'occurrence,' even when it has a connection to other acts." Id. at 111.

As described in Kahn v. Kohlberg, 970 F.2d 1030 (2d Cir. 1992), the continuing violation or wrong doctrine has been applied in areas of law outside of employment discrimination to permit a claim to accrue each time the plaintiff sustains damages. Id. at 1039. It allows the plaintiff to recover "when the statute of limitations would have expired if it commenced at the time of defendant's first act." Id. Often, the rule is based upon "the impracticality and unfairness of requiring a plaintiff to institute his action before he can predict his damages." Id. It allows a plaintiff "to reach back past the limitations period to point to wrongful conduct" and in other cases also "to reach back in order to calculate his damages."[3] Id. at 1040 n.7.

The Second Circuit has not yet addressed whether the continuing violation doctrine applies to a Bivens action, but it has held that the continuing violation doctrine does not apply to FELA claims because it would be inconsistent with the

---

[3] In this case, the plaintiff has explicitly abandoned any request for compensation based on pain and suffering arising prior to March 1, 2002 "as a result of Defendants' failure to treat his existing injuries, as opposed to the exacerbation of preexisting medical conditions for the period beyond the statute of limitations."

discovery rule that governs such actions. Mix, 345 F.3d at 88.[4] That same "discovery rule" governs Bivens claims. Kronisch, 150 F.3d at 123.

It is unnecessary to decide in this case, however, whether the continuing violation doctrine might ever apply to a Bivens action, since it does not apply to this Bivens claim, in which a constitutional claim is triggered by each refusal to provide care in response to a specific request for care. The elements of a Bivens claim are: (1) that a defendant acted "under color of federal law" (2) "to deprive plaintiff of a constitutional right." Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995); see Correctional Svcs. Corp. v. Malesko, 534 U.S. 61, 66 (2001). In the context of inadequate medical care, to show the deprivation of a right secured by the Eighth Amendment a plaintiff must prove "deliberate indifference to his serious medical needs." Smith v. Carpenter, 316 F.3d 178, 183 (2d Cir. 2003) (citation omitted). The deliberate indifference element "ensures that the

---

[4] In Pino v. Ryan, 49 F.3d 51 (2d Cir. 1995), the Second Circuit Court of Appeals affirmed a sua sponte dismissal of a Section 1983 failure-to-provide-medical-care claim where the injury occurred more than two years beyond the statute of limitations. Id. at 54. The court noted that the "plaintiff has alleged no facts indicating a continuous or ongoing violation of his constitutional rights." Id. The decision did not have occasion to address whether a claim that accrued within the statute of limitations period could, through application of the continuing violation doctrine, reach back to encompass conduct and injuries occurring beyond the statute of limitations.

13

defendant prison official acted with a sufficiently culpable state of mind." Id. at 184.

A necessary element of Barbaro's Eighth Amendment claim, therefore, is that a defendant intentionally denied him medical care for serious health problems. He asserts that the defendants did so each time they refused his requests for treatment. Thus, the statute of limitations runs anew from each discrete act of intentional denial of treatment. As in Ledbetter v. Goodyear Tire & Rubber Co., 127 S.Ct. 2162 (2007), which recently addressed the statute of limitations rules for Title VII employment discrimination cases, if a defendant "engages in a series of acts each of which is intentionally discriminatory, then a fresh violation takes place when each act is committed." Id. at 2169. Thus, "a freestanding violation may always be charged within its own charging period regardless of its connection to other violations." Id. at 2174.

Barbaro's complaint is not properly analogized to a hostile work environment claim, which is "based on the cumulative effect of individual acts," "each of which may not be actionable on its own," or may not even be said to have occurred "on any particular day." Id. at 2175 (citation omitted). He is, instead, complaining of a series of discrete, albeit connected, wrongful acts. He asserts that it was wrong to deny him care at the time he first requested treatment for the effects of the

14

auto collision from which he was suffering when he arrived at the prison, at the time of his penultimate request before being transferred to another facility for treatment, and on each occasion in between on which he requested care.

Rejecting in this case the continuing violation exception to the ordinary rules for determining the accrual of a claim, is also consistent with the congressional policy reflected in the passage of the Prison Litigation Reform Act ("PLRA"). To file a suit in federal court, a prisoner must properly exhaust the claim, which includes abiding by the deadlines set by an institution's grievance policy. Jones v. Bock, 127 S.Ct. 910, 922 (2007). To "properly exhaust administrative remedies" as required by the PLRA, "prisoners must complete the administrative review process in accordance with the applicable procedural rules" of the prison in which they are held. Id. (citation omitted); see 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement serves several purposes, including "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id. at 923.

Moreover, as was true in Ledbetter, there are strong policy reasons here for respecting the policy of repose which a statute

of limitations represents. Where a plaintiff must prove intentional misconduct, as Barbaro must for his Eighth Amendment claim, the "passage of time may seriously diminish the ability of the parties and the factfinder to reconstruct what actually happened." Ledbetter, 127 S.Ct. at 2171. Allowing Barbaro to reach back to alleged violations of his constitutional rights that precede the statute of limitations by as much as four years will undermine the reliability of the fact-finding process.

Barbaro points to a series of decisions in which courts have treated deliberate indifference claims based upon a prison's failure to provide medical treatment as continuing violations. See, e.g., Heard v. Sheahan, 253 F.3d 316 (7th Cir. 2001)(Posner, J.); Laureano v. Goord, No. 06 Civ. 7845 (SHS)(RLE), 2007 WL 2826649, at * 4 (S.D.N.Y. Aug. 31, 2007) (M.J.), adopted by 2007 WL 2842770; Rashid v. McGraw, 01 Civ. 10996 (DAB), 2006 WL 1378945, at *4 (S.D.N.Y. May 18, 2006); Shomo v. City of New York, 03 Civ. 10213 (AKH), 2005 WL 756834, at *4-5 (S.D.N.Y. Apr. 4, 2005); Cole v. Miraflor, 99 Civ. 977 (RWS), 2001 WL 138765, at *6 (S.D.N.Y. Feb. 19, 2001).

In Heard, the Seventh Circuit acknowledged that federal common law furnishes the rule under which Section 1983 suits accrue. Heard, 253 F.3d at 318. Recognizing that a Section 1983 failure-to-provide-medical-care claim depended upon proof of the deliberate indifference of the defendants to the

16

plaintiff's medical problems, it held that the claim did not accrue until the prison officials learned of the condition and unreasonably refused to provide treatment. Id. Where the injuries are "the consequence of a numerous and continuous series of events", and because there are good reasons to "push back the accrual date" and encourage a prisoner to delay bringing suit, the court held that the plaintiff could defer filing suit and yet recover for "all the pain after the date of onset." Id. at 318-20. The Seventh Circuit observed that the application of the continuing violation doctrine would permit a plaintiff to file suit within the statute of limitations period following a request for treatment that was ignored, and yet reach back to the beginning of the violation "even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." Id. at 319-20.

In Laureano, 2007 WL 2826649, the estates of two prisoners who had committed suicide brought Section 1983 actions to complain of the defendants' deliberate indifference to the prisoners' psychiatric needs. Id. at *2. The court held that the Section 1983 claim brought by one plaintiff, Delrios, accrued on the last day the prisoner was incarcerated at the prison facility and, adopting the continuing violation doctrine

from Title VII law and relying on Heard, further held that the claim encompassed all related conduct occurring during the incarceration at the facility. Id. at *4.

In Rashid, 2006 WL 1378945, the plaintiff brought a Section 1983 action in 2001 to complain of inadequate dental treatment that dated back to 1994. Id. at *4. Relying on Heard, the district court denied the defendants' motion for summary judgment on the ground that the action was barred by the statute of limitations, finding that the claim had accrued when the plaintiff left the prison, reasoning that the defendants had the power to treat his condition up until that date. Id. at *5. In reaching this conclusion, the court rejected the defendants' contention that the accrual date was the date of the plaintiff's last letter of complaint. Id.

In Shomo, 2005 WL 756834, the prisoner had arrived at the correctional facility with a paralyzed arm. He brought a Section 1983 action, alleging that the defendants had refused to treat the pain and other symptoms associated with the condition despite his repeated requests, and provided inadequate care for other injuries he suffered while incarcerated. The plaintiff did not identify any specific failure to treat his condition within the three year statute of limitations period, but did generally allege that the defendants were deliberately indifferent to his serious medical needs for a period that

18

included three months within that period.  Id. at *3.  Relying on an analogy to hostile work environment claims, the court applied the doctrine of continuing violation to find that the claim could accrue within the statute of limitations period so long as he alleged "non-time-barred acts in furtherance of the alleged policy of denying him medical treatment".  Id. at *6.

Finally, in Cole, 2001 WL 138765, the plaintiff complained that a prison official had refused to medically excuse him from having to sleep in a top bunk despite his serious back ailment.  Id. at *1.  In denying a motion to dismiss, the district court applied the discovery rule for accrual of the Section 1983 action, id. at *3, and using the continuing violation doctrine and Title VII jurisprudence, found that the claim accrued when the plaintiff left the institution, and not when the plaintiff arrived at the institution and first requested a different bunk assignment.  Id. at *6.

To the extent that these decisions rely on a continuing violation doctrine to allow a plaintiff to seek recovery for wrongful acts that occurred before the statute of limitations period in factual settings similar to Barbaro's, they will not be followed here.  Several of these cases predate Morgan and Ledbetter, and those that follow these Supreme Court decisions do not grapple with their implications for the viability of the continuing violation doctrine.  As for the lower court decisions

in this Circuit, they also fail to confront the Second Circuit's rejection of the continuing violation doctrine in Mix, and consider the application of its holding to other statutes which rely, as does the FELA statute considered in Mix, on a discovery trigger for the accrual of a claim. Accordingly, the ruling in the 2006 Opinion which granted the Government's motion to bar recovery based on conduct that preceded the statute of limitations period for the Bivens claim remains unchanged.

CONCLUSION

Barbaro's renewed opposition, made through his submission of July 21, 2007, to the Government's motion to dismiss is rejected.

SO ORDERED.

Dated: New York, New York
October 30, 2007

_____
DENISE COTE
United States District Judge

20